**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

CALVIN POWELL,

     Plaintiff,

v.                                Case No.  5:18-cv-233-TKW/MJF

 INCH and MILLER,

     Defendants.

_____/

## <u>REPORT AND RECOMMENDATION</u>

This cause is before this court on Defendants' Motion to Dismiss (Doc. 41), and Plaintiff's response to the motion to dismiss. (Doc. 47). For the reasons set forth below, the undersigned recommends that Defendants' motion to be dismiss be granted and this case be dismissed.[1]

## I.   Background

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983 against three Defendants: (1) Julie L. Jones,[2] (2) Sergeant Miller, and (3) Sergeant Hightower.

---

[1] This case was referred to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

[2] Mark Inch was substituted for Julie Jones in her official capacity pursuant to Rule 25 of the Federal Rules of Civil Procedure.

(Doc. 1 at 1). After screening Plaintiff's complaint under 28 U.S.C. § 1915(e)(2)(B), the undersigned directed Plaintiff to file an amended complaint. (Doc. 14). On May 20, 2019, Plaintiff's amended complaint was docketed. (Doc. 20). In his amended complaint, Plaintiff omitted his claim against Officer Hightower. (*Id.*).

On or about October 1, 2014, Plaintiff was housed at "a state sentence unit" for state prisoners and parole violators. (*Id.* at 5). While he was housed at this unit, Plaintiff learned that inmate gang members had made threats against him. (*Id.*). Plaintiff petitioned Julie Jones, then the Secretary of the Florida Department of Corrections ("FDC"), to provide Plaintiff a safe environment when he returned to FDC custody. (*Id.* at 5–6.).

On March 15, 2015, Plaintiff was housed at Calhoun Correctional Institution. (*Id.* at 6.). Sergeant Miller took Plaintiff to his dorm and warned Plaintiff that the dorm was known as "Hell Hotel" because inmates daily assaulted other inmates who were not gang members. Sergeant Miller advised Plaintiff either to stay in his cell or obtain a weapon. (*Id.*).

On August 23, 2015, several inmates entered Plaintiff's cell, threw a blanket over Plaintiff's head, and beat him for approximately one hour. (Doc. 20 at 6). During this time, Plaintiff alleges that Sergeant Miller failed to conduct security checks. Upon being notified of the assault, Sergeant Miller escorted Plaintiff to confinement. (*Id.*). Plaintiff was subsequently transferred to a different correctional

facility.[3] Plaintiff seeks monetary damages.

## II.    Standard

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. In applying that rule, the allegations of the complaint are considered to be true and are construed in the light most favorable to the plaintiff. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation and citation omitted); *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015).

A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (citation omitted). Plausibility means "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation and citation omitted).

---

[3] In his amended complaint, Plaintiff states that he was attacked on two additional occasions at two different institutions. (Doc. 20 at 7). Plaintiff, however, fails to allege facts that would connect Sergeant Miller to these attacks.

The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S. Ct. at 1950 (citation omitted). The pleader is not entitled to relief "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* (citing Fed. R. Civ. P. 8(a)(2)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678, 129 S. Ct. at 1949 (quotation and citation omitted). And "bare assertions" that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Id.* at 681, 129 S. Ct. at 1951 (quotation and citation omitted).

Courts hold a *pro se* complaint to "less stringent standards than formal pleadings drafted by lawyers" and accordingly construe it "liberally." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014) (citation omitted). Courts must not, however, "serve as *de facto* counsel" or "rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168-69 (quoting *GJR Invs., Inc. v. Cty. of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998)).

## III.   Discussion

Defendants move to dismiss Plaintiff's complaint because he failed to exhaust his administrative remedies as required by the PLRA.  (Doc. 41 at 3-8).

Under the Prison Litigation Reform Act ("PLRA"), a prisoner may not file a § 1983 action "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Alexander v. Hawk*, 159 F.3d 1321, 1323-24 (11th Cir. 1998). This exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, whether they allege excessive force or some other wrong, and whether they seek injunctive relief, monetary damages, or both. *See Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002).

Exhaustion of administrative remedies serves two main purposes: first, it protects administrative agency authority, in that it gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court; and, second, it promotes efficiency in that claims generally can be resolved more quickly and economically in proceedings before an agency than in litigation in federal court. *Woodford v. Ngo*, 548 U.S. 81, 88-89, 126 S. Ct. 2378, 2384-85 (2006).

Thus, exhaustion of available administrative remedies is a mandatory pre-condition to an inmate's civil action. *See Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 1824 (2001) ("The 'available' 'remed[y]' must be 'exhausted' <u>before</u> a complaint under § 1983 may be entertained.") (emphasis added); *see also Porter*, 534 U.S. at 524-25, 122 S. Ct. at 988 ("Beyond doubt, Congress enacted § 1997e(a)

to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."). "[T]he PLRA exhaustion requirement requires *proper* exhaustion." *Woodford*, 548 U.S. at 93, 126 S. Ct. at 2387 (emphasis added). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91, 126 S. Ct. at 2386; *see Jones v. Bock*, 549 U.S. 199, 218, 127 S. Ct. 910, 922 (2007) ("[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' . . . —rules that are defined not by the PLRA, but by the prison grievance process itself."). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218, 127 S. Ct. at 922.

The FDC's grievance procedure requires an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance at the institutional level with the Warden's office, and (3) submit an appeal to the Office of the Secretary (through the Bureau of Policy Management and Inmate Appeals in the FDC's Central Office). *See* Fla. Admin. Code rr. 33-103.005 to 33-103.007; *see*

*also Parzyck v. Prison Health Servs., Inc.*, 627 F.3d 1215, 1218 (11th Cir. 2010). Appeals and direct grievances to the Office of the Secretary are processed through the institution. Fla. Admin. Code r. 33-103.007(5). Each institution has a designated office through which grievances and appeals are processed. (*Id.*). That designated office has a logging and tracking system that records and documents receipt and mailing of inmate grievances and appeals. (*Id.*).

As to the level of detail required, the Florida Administrative Code mandates only that grievances be "legible" and include "accurately stated" facts, and "address only one issue or complaint." Fla. Admin. Code. R. 33-103.005(2)(b)(2); *see also Goldsmith v. White*, 357 F. Supp. 2d 1336, 1339 (N.D. Fla. 2005).

## A.    Procedure for Adjudicating an Exhaustion Defense

The failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden of establishing. *See Jones*, 549 U.S. at 216, 127 S. Ct. at 921 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."). In *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008), the Eleventh Circuit outlined the procedure district courts should follow when presented with a motion to dismiss for failure to exhaust administrative remedies under the PLRA. The defense of failure to exhaust should be treated as a matter in abatement. *See id.* at 1374. "This means that procedurally the defense is treated 'like

a defense for lack of jurisdiction,' although it is not a jurisdictional matter." *Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*quoting Bryant*, 530 F.3d at 1374). Because exhaustion is a matter in abatement, "it should be raised in a motion to dismiss or be treated as such if raised in a motion for summary judgment." *Bryant*, 530 F.3d at 1374-75 (citation and internal quotation omitted).

Adjudicating a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner*, 541 F.3d at 1082. First, the court looks to the factual allegations in the defendant's motion, and those in the plaintiff's response. *See id.* If they conflict, the court accepts the plaintiff's version as true. "If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed." *Id.*; *see also Bryant*, 530 F.3d at 1373-74.

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, "the court proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082 (*citing Bryant*, 530 F.3d at 1373-74, 1376). "The defendants bear the burden of proving that the plaintiff has failed to exhaust his available administrative remedies." *Id.* Upon making findings on the disputed issues of fact, the court then decides whether, under those findings, the plaintiff has exhausted his available administrative remedies. *See, e.g., Singleton v. Dep't of Corr.*, 323 F. App'x 783,

785 (11th Cir. 2009) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.") (citing *Bryant*, 530 F.3d at 1376).

### B.    <u>Application of the *Turner* Analysis</u>

Plaintiff alleges that he filed several requests to be transferred to another prison, but prison officials failed to answer these requests. (Doc. 20 at 6). Plaintiff also asserts that he filed several grievances in an attempt to exhaust his administrative remedies, but that prison officials also ignored these grievances. Plaintiff, however, does not clarify when or with whom he filed these initial grievances. (Doc. 47 at ¶ 18). Plaintiff does assert that in October 2018—more than three years after the alleged attack—he filed subsequent grievances in an attempt to exhaust his administrative remedies. (Doc. 47 at ¶¶ 19-20). He attached a copy of these grievance appeals to his response to Defendants' motion to dismiss. (Doc. 47 at 17, 18-19, 24).

Defendants acknowledge that "between March of 2015 and October of 2018, Plaintiff had no approved informal or formal grievances regarding his claims . . . ." (Doc. 41 at 7; Doc. 41-1 at 1). Defendants also acknowledge that in October 2018, Plaintiff filed three appeals of grievances that mention the August 2015 attack.[4]

_____

[4] Although these grievances may have fully exhausted Plaintiff's administrative

Defendants assert, however, Plaintiff failed to exhaust his administrative remedies through the final appeal with the Central Office before commencing this lawsuit on October 1, 2018.

At step one of the *Turner* analysis, the court notes that Plaintiff asserts he filed several grievances that were ignored, and the Defendants acknowledge that Plaintiff did not have an approved or unapproved informal or formal grievance. Because Plaintiff did not receive a response to either his informal or formal grievances, Plaintiff was permitted to proceed to the next step of the grievance procedure and submit an appeal to the Central Office. Fla. Admin. Code Ann. r. 33-103.011.[5] There is a conflict, however, between the parties' factual allegation whether Plaintiff

---

remedies, Plaintiff filed these grievances *after* Plaintiff initiated his lawsuit on October 1, 2018. (Doc. 47 at 17, 18-19, 24). Proper exhaustion must occur *before* the Plaintiff initiates the lawsuit. *Booth*, 532 U.S. at 731, S. Ct. at 1820; *see Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012) ("The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint."). Because these appeals were filed after Plaintiff initiated the lawsuit, Plaintiff cannot show that he exhausted his administrative remedies with these grievances.

[5] For an inmate to properly exhaust his administrative remedies, he must pursue his grievance through each step of the process unless it is unavailable. *Bryant*, 530 F.3d at 1378 (holding that "prisoners must properly take each step within the administrative process."). Even if an inmate receives no response at the informal or formal level, the regulations provide inmates with the ability to proceed to the next step. Thus, Plaintiff could only properly exhaust by continuing the process to the next step. *See Nicely v. Lagman*, No. 2014 WL 3721266, at *2 (M.D. Fla. July 28, 2014); *Milton v. Fleckenstein*, No. 2011 WL 208310, at *1 (M.D. Fla. Jan. 21, 2011) (citing *Williams v. McGinnis*, 57 F. App'x 662, 664 (6th Cir. 2003)).

submitted the final grievance with the Central Office. Thus, taking Plaintiff's facts as true that he filed some grievances in attempt to exhaust, this court finds that Defendants are not entitled to dismissal at step one. Therefore, the court will proceed to step two of the *Turner* analysis.

At step two, Plaintiff's sole allegation is that he sent several grievances attempting to exhaust the administrative remedies at several institutions. (Doc. 40 at 4). Defendants, on the other hand, support their contention that Plaintiff failed to exhaust his administrative remedies by attaching an affidavit of Lawanda Sanders and a printout of Plaintiff's appeal records. (Doc. 41-1). Ms. Sanders reviewed Plaintiff's inmate file for grievance appeals that were filed to the Office of the Secretary. Plaintiff's inmate file contains twelve appeals from March 2015 through December 2018. (Doc. 41-2 at 1).

Plaintiff filed only two appeals regarding protective management prior to commencing this lawsuit.[6] Plaintiff filed an appeal on November 28, 2017 regarding protective management. This grievance appeal, however, was about an incident that occurred in September of 2017 at a different correctional institution. In the appeal, Plaintiff complained that the institutional classification team ("ICT") denied him protective management after he was attacked by gang members in September 2017.

---

[6] The other appeals filed by Plaintiff prior to commencing this lawsuit concerned issues other than protective management as indicated by Plaintiff's grievance appeal log. (Doc. 41-2 at 2–3).

He also alleged that ICT improperly allowed him to return to the same dorm in which the gang members resided. Plaintiff references the August 23, 2015 attack only insofar as he states, "it should be noted that I was previously assaulted and beaten with a pipe around 8/23/15 by gang members." The FDC reasonably construed the grievance as challenging the ICT's decision regarding protective management after the September 2017 attack.

Furthermore, this grievance was not decided on the merits. Rather, the Central Office returned it to Plaintiff without action because Plaintiff had filed the grievance prematurely insofar as prison officials already had approved a protective transfer on November 28, 2017. (Doc. 41-3 at 3). Thus, this grievance appeal did not properly exhaust his claim as to the August 2015 attack. *See Simpson v. Holder*, 200 F. App'x 836, 840 (11th Cir. 2006) (noting that plaintiff did not exhaust when his grievances "tangentially referred to his other claims" but did not request a remedy and the prison official's response did not respond to the other claims).

Similarly, Plaintiff filed an appeal in March of 2018 regarding an incident that occurred on February 13, 2018, this appeal does not reference the August 23, 2015 attack. Rather, Plaintiff grieved the February 13, 2018 attack and the denial of his request for protective management. (Doc. 41-4 at 1). The grievance was not accepted as an emergency grievance, and prison officials therefore returned it to Plaintiff due to non-compliance with procedural rules. (*Id.* at 2). Additionally, the Central Office

returned the grievance without action because Plaintiff's grievance was premature insofar as he was still under review by the State Classification Office for placement on protective management. (*Id.*). The notice informed Plaintiff that if he was denied protective management, he could appeal the issue to the Central Office. (*Id.*).

Based on the evidence presented by the Defendant and Plaintiff's allegations, it is clear that Plaintiff failed to properly exhaust his administrative remedies regarding the August 23, 2015 attack by submitting a final appeal to the Central Office regarding this incident. Thus, under the PLRA, Plaintiff's claim against Defendants Miller and Inch must be dismissed for Plaintiff's failure to exhaust his administrative remedies.

**IV.    Conclusion**

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1.    Defendants' Motion to Dismiss (Doc. 41) be **GRANTED** and the claims against Defendants Miller and Inch be **DISMISSED**.

2.    The clerk of the court be directed to close the case file and terminate all pending motions.

At Panama City Beach, Florida, this 21st day of January, 2020.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.